18-14-21 Good morning, Your Honors. May it please the Court. Cody Wisniewski of Mountain States Legal Foundation on behalf of Appellants. I'll do my best to reserve three minutes for rebuttal today. Pullman abstention is a narrowly tailored exception to the broad responsibility of federal court jurisdiction and such abstention is not appropriate in this case. To that end I'll address three points before the Court this morning. First, the Supreme Court's clear trend away from allowing for abstention in matters of fundamental and civil rights since the passage of the Civil Rights Act of 1964. Second, the parallels between those cases and the case before this Court. And third, the appropriate standard review in this case. Now before I reach my first point, Your Honors, I'll summarize the relatively uncomplicated key fact underlying the litigation. Early on in the case the District Court expressed concern with the interplay of the Colorado preemption statute, Colorado's home rule exception, and the Boulder ordinances. And it thought that it might be able to avoid the constitutional questions before it by exercising Pullman abstention. Now the District Court asked the parties to brief the issue and after briefing was concluded, despite the underlying fundamental rights, the District Court entered in order exercising Pullman abstention in this matter. And that, Your Honors, is where the District Court erred. Which brings me to my first point, then the importance of jurisdiction and the narrowness of Pullman abstention. Don't you specifically have a state law question here that has to be decided before the Second Amendment question can be decided? No, Your Honor. There are state law questions that may be before the Court. Appellants have disputed whether those are unanswered or not, a number of which may in fact be answered. But the Second Amendment question does not rely on the decision of a state law question at all. Now that's not directly how Pullman operates, where generally it's if the Court can avoid the constitutional questions. However... But the that's not in dispute. But what's clear here is that the rights that are at issue are so important that the Supreme Court has deigned to avoid abstention in matters such as these. And that's because federal district courts... So you want the federal court to answer the state law questions? Not necessarily, Your Honor. We did ask the federal court below to answer the state law questions, however... But doesn't it necessarily have to answer the state law questions which are directly related to the regulation of weapons? No, Your Honor. The district court could answer the federal constitutional claims without addressing the state law questions at all. Why would a federal court do that under the doctrine of constitutional avoidance? The key here, Your Honor, is the rights involved. With the passage of the Civil Rights Act... Well, no, no, no, no. The question... I understand that you've got a Second Amendment claim, but you've also got the issue that Judge Seymour raised, which is whether Colorado state law preempts these ordinances. And if it does, why wouldn't that moot your Second Amendment claims? Your Honor, it's appellant's position that the state court could not completely moot the Second Amendment claims. There are a number of questions before the court that were potentially answered. There are also questions before the current state court that... Or sorry, there are not questions before the current state court that are before the federal court. I'm a little confused. If the state law preempts the ordinances that you're challenging, the ordinances are gone, so where is the rest of your case at that point? Your Honor, if the state law completely preempted the Boulder Ordinance, which is unlikely in this case. But that's the issue. Yes, Your Honor. The issue is whether the district court properly abstains so that that issue could be resolved in a pending Colorado case. Yes, Your Honor. Two points to that. First, the pending Colorado case does not address the breadth of claims that appellant's case below does. That case only addresses the open carry portion of Boulder's Ordinance, as well as the definition of assault weapon in Boulder's Ordinance. Of course, you could file a case in state court. We could, Your Honor. It is certainly a possibility, but that defeats the entire purpose of the enactment of the Civil Rights Act of 1964, and now 42 U.S.C. 1983. The other question that would still remain... That would always be true in any preemption case, wouldn't it? Potentially, Your Honor. A delay is all it is, right? Yes, Your Honor. But what we see in the Supreme Court's precedent after the enactment of that delay, when you are addressing matters of fundamental... Ever? Ever? I mean, wouldn't that completely eliminate the abstention doctrine? Because if a court abstains, there is inherently going to be some delay. Yes, Your Honor. But the question was posed by the Supreme Court in Harmon v. Fresenius, and there the Supreme Court said that the question was, could there be an impermissible chilling effect on the exercise of a fundamental right? And in that case, that was the right to vote. Now, Pullman abstention and abstention generally would certainly still be allowed to exist. Cases cited by the City of Boulder, such as Chicago v. Fieldcrest Dairies, Cedars-Shake and Shingle v. the City of Los Angeles, Reitz v. Bonnyack, those all address minor federal statutory rights or federal regulations. We're those instances, abstention is certainly appropriate. There's no chilling effect, no potential chilling effect, on the exercise of a fundamental right. The Supreme Court has not considered milk bottles or roofing tiles or fishing licenses to be fundamental to our system of ordered liberty. Now, the rights underlying this case, the Supreme Court has. Specifically, the Supreme Court has also refused to allow for abstention, not only in First Amendment cases, but also in due process cases, such as Wisconsin v. Constantinople, and the right to vote under the 24th Amendment in Harmon v. Fresenius. Appellants have brought a number of claims below, but those claims do include First Amendment claims, as well as due process claims under the 5th and 14th Amendments. What's clear, Your Honors, is that the Supreme Court, with its first case, Harmon v. Fresenius, was decided in 1965, right after the passage of the Civil Rights Act, all the way through City of Houston v. Hill, decided in the late 1980s. The Supreme Court showed a clear trend in reaction to the passage of the Civil Rights Act. Let me ask, do you concede that the three elements for Pullman abstention are present here? No, Your Honor. Which one do you challenge? I'll go through the three. An uncertain issue of state law underlies the federal constitutional claim. Do you challenge that? Yes. Even though there's a 4-4 split in the state Supreme Court decision? Yes, Your Honor. Can you get more uncertain than that? I suppose that is informative in a sense, Your Honor, but there is a underlying district court opinion that was affirmed in that case. The Supreme Court opinion doesn't carry any sort of precedential weight, and obviously the district court opinion is merely informative. But in, specifically in City of Houston v. Hill, the Supreme Court looked at something similar, where there was only a Texas state decision on the issue. And the court said that's enough to determine that there is an answered question, and we can apply that in order to follow the test, which is identical to the facts before this court. Yeah, but you have something contrary to it. You had the state lower court decision, but then when that's challenged before the state Supreme Court, and you get a 4-4 split. Absolutely, Your Honor. And so I don't want to take too much of your time on that issue. What about the second requirement of Pullman? The state issues are amenable to interpretation, and such an interpretation obviates the need for substantially narrows the scope of the constitutional claim. Is that not clearly correct here? It could potentially be present. However, appellants, plaintiffs also advanced a damages claim under Section 1983. And in order to determine that damages claim, the court's going to have to decide the constitutional issues to determine if the City of Boulder did in fact violate plaintiffs fundamental rights under color of state law. What about the third component? An incorrect decision of state law by the district court would hinder important state law policies. So that's not present here, Your Honor, because, and I would point the court to the Supreme Court's decision in Babbitt, where the Supreme Court decided to remand the federal constitutional issues and leave the state issues state. Now, appellants believe that the state court, or sorry, that the federal district court is well within its abilities to apply state law in this case and come to a decision there. However, appellants would also advance that this court could also partially remand the case and could remand just the federal constitutional issues and leave the state issues state. Could I just ask you to clarify your damages? Have the ordinances, are the ordinances in effect? Have they, are they being enforced or have they been stayed pending this litigation? The ordinances are in effect, Your Honor. There was a discussion about a potential stay at the district court and Boulder did not stay the ordinances, stay the enforcement ordinances. So I, just to be clear on the damages point you made, are you saying that the plaintiffs have been incurring damages since they went into effect? Correct, Your Honor. Which, in order to determine that question, the court will have to tangle with the federal constitutional questions because the state, whether or not the ordinance is valid and invalidated on state grounds, would not change that answer and would not necessarily inform the federal decision. On your Chilling argument, if we agree with that, would this court be the first, Your Honor? Not necessarily because that is, and specifically not because that is a concept that's only tied to the First Amendment? No, no, I understand. I just, I understand your answer. Thank you. Yes, Your Honor. Let me ask you this. Let's say the three elements for pullman abstention have been found. Can you cite any cases where, despite all three elements being established, the Supreme Court has not abstained under Pullman, has not required that? You mentioned Harmon. There's language that, you accurately quoted language from Harmon, but Harmon also said the state law is clear. So Pullman abstention would not have been available anyway. They went ahead and said that and that's true of the other cases in which the Supreme Court has not applied Pullman abstention. In every one of those cases, despite language about the importance of the right and Chilling effect, in each of those cases the elements of Pullman abstention have not, not all of the elements have been present. Isn't that correct? Not necessarily, Your Honor. The analysis that the Supreme Court goes through doesn't take that form and I would point the court to City of Houston. Maybe that's how to read it because they do say, they do talk about Chilling effect and maybe you could say, well therefore, even if the law wasn't clear in Harmon, the importance of the constitutional interest overrides Pullman abstention. But in fact, that's the situation. In each of the cases, despite the language that they expressed and that you rely on, it's also true that at least one element of Pullman abstention was not present in each of those cases. Isn't that correct? Yes, Your Honor. Do you have any lower court decisions, circuit of opinions, that you think have declined to apply Pullman even when all three elements of Pullman were present? No, Your Honor, and we would dispute, however, that all three elements are met, as we stated. Yes, no, I understand that. But the key in the Supreme Court's analysis and why they only look to one factor or they don't go through all three factors is because in City of Houston and in Pullman itself, this question is treated as a threshold question. While they do tangle with one or two questions under Pullman often, the court in City of Houston specifically said, even if this case did not involve a defined abstention, inappropriate. The Supreme Court tangles with that question first. So the reason why there are no illustrative Supreme Court decisions on that case, Your Honor, and appellants are focusing predominantly on Supreme Court and Tenth Circuit law, is because the Supreme Court doesn't go through that analysis in cases such as these. And I see my time is about to expire. I'm gonna have to ask you a question, just to put my mind at ease about it, but can you explain why at least one of the plaintiffs has standing as to each of the 39 claims that were brought in this case? The claims were brought under each individual plaintiff. So each plaintiff argues their, so the Second Amendment claim was brought per John Caldera, per the Boulder Rifle Club, per General Commerce LLC. Because the standing analyses under each one were different, we broke it up that way for the District Court. If this case were remanded, we could certainly amend. The District Court did ask for us to clarify the structure of claims. All right, so if we look at the District Court record, there's something there where you laid out the standing analysis? Yes, Your Honor. Thank you. Don't be too disappointed, it's a rare counsel that's able to reserve so much time. Good morning, Your Honors. May it please the Court. This case presents a The decision below should be affirmed for three reasons. First, the District Court correctly concluded that all three of the Pullman factors are easily met here. Thus, under this Court's precedent in Layman and others, there is a presumption that abstention should apply. Second, the District Court weighed those factors with plaintiffs' arguments that you just heard and properly exercised discretion to order abstention. And third, the District Court resolved abstention at the outset of this case so as to minimize the effect of delay. Turning to the first point, I see there's a question, Your Honor. Yes, I'm concerned about the damages claim. That sure seems to mean that the constitutional issue is going to be present regardless of what happens under state law. So the second Pullman factor is not whether it completely obviates the constitutional question, but whether it substantially narrows it. How does it even narrow it if there's a delay? Well, I think, Your Honor, that it's not clear that there would be. So I guess your question is, if it is completely preempted by state law and therefore the ordinance is no longer in effect, whether they'd still have a constitutional claim for that intervening period? Yes. Well, I guess there's a few ways to answer it. One is, I'm not sure that circumstance has arisen, but to answer the factual question that Judge Matheson asked, it's my understanding, again, I'm responding to the question, this is outside the record, there have been no enforcement actions brought to date under this ordinance. And so I think there are a number of questions whether the damage... You're saying that the plaintiffs have to risk violating the law? Then you do get to chilling effect, I think. Because in measuring damages, they can say we're law-abiding until we get a court ruling saying the ordinance doesn't apply to us. We're not exercising our Second Amendment rights and we're entitled to damages. And I don't see how you avoid that. Your Honor, so this is actually an issue that we're hearing for the first time during oral argument. I think there's a significant question of waiver, because as part of the analysis under Pullman, both below and in this court, we focused on the... Both sides have focused on those three issues. And so I think there may be a procedural hurdle to addressing that here. It certainly wasn't an abuse of discretion for the district court not to factor in that as one of the additional factors. So you're saying the possibility of a lawsuit for damages, even if the ordinance is ultimately voided by the state courts, was not argued with respect to the Pullman second factor in the district court? I don't want to be... It could have been. I'm not aware of it. I've not seen this argument. It certainly was not part of the briefing on appeal. But I also think that it's a backdoor to undermine Pullman altogether. By including a 1983 damages claim in any constitutional suit, a plaintiff would be able to say Pullman is just off the table. And there are a couple of arguments that the plaintiffs have advanced here that essentially are attempts to either completely undermine or overturn the Pullman abstention doctrine, including the argument about fundamental rights. And so I think there's a dangerous effect if, just by including a damages claim in any constitutional adjudication, you undermine the federalism concerns, the constitutional avoidance point that underlie Pullman. So again, returning to the three Pullman factors, the first is whether there's an unsettled question of state law that underlies the federal constitutional claim. And as your honors pointed out, the only time the Colorado courts have addressed the issue of state law preemption under the municipal home rule provision of the Colorado Constitution, they deadlocked three to three. Could I just ask you on this issue, what is your position in this case as to whether the state statutes preempt the Boulder ordinances? Our position is that the state statutes do not preempt the Boulder ordinances. And we recognize that the plaintiffs have taken the opposing position. We are litigating that in state court in the chamber's lawsuit, and the state supreme court is divided three-three with no presidential decision on point. It sounds like you think that's pretty clear. Our litigation position is that these are matters of local concern, and even if there are issues that potentially implicate state concern, that there may be an issue of conflict analysis. I guess I'm just going to ask the question then. If you're confident in that position, why not just let the district court decide the claim and not abstain? So for two reasons, your honor. One is that this is the virtue of Pullman abstention. There are more interests at stake than just the party's desires. For instance, the need to respect federalism, to allow the state court to decide an issue, because if the state court doesn't decide it and instead the federal court decides it, then they're just making a forecast on how the state law is going to resolve. And this gets to the third Pullman factor, whether an incorrect decision, really a forecast on the state law question, would inhibit important state policies. And here the state policies are at their zenith. This is a question about how Colorado divides its regulatory power between state and local governments. It's a sensitive and complex question that this court in Rawls recognized is dedicated entirely to the province of Colorado law. Well how does it undermine state interest if the state court doesn't have to pay any attention to how we interpret state law, how a federal court interprets state law? How does that undermine? So the federal court is picking a side. It is determining for the people of Colorado in this case, and as it applies here, whether this is an issue of local or for instance statewide concern. And the virtue of Colorado's Home Rule provision, this is not just a baby supremacy clause. The Colorado Home Rule provision recognizes that if the matter is of local concern, then the local ordinance trumps a contrary state law. And it recognizes that the people of Colorado, its communities, may make different decisions about how to balance public interest concerns like this case implicates. For instance, what's... Is this related to the fact that these are Home Rule entities? Yes, Your Honor. Precisely. And what a Home Rule municipality may, decision they may make, for instance, for a rural farming community on the Western Slope, may be different than the public policy balance that is struck by Denver or Boulder in this instance of context. And so the sensitivity and the grave localized concerns, the implications of deciding that question one way or the other, would interfere with state law policies here. And this is precisely what the court recognized in the role. Explain how it interferes with state policies. I can see how it affects the parties in this case for the time being, but state policy is still left to the state. And the next case that comes up, which might be very soon, maybe it's been filed already. And in fact... In fact it has? In fact it has, Your Honor. There is a parallel proceeding going on in the state court. That's what we call the chambers litigation. And the exact same questions are presented there. The same preemption state law question about the particular parts of the ordinance, counsel said that it... But I think that cuts against you in a way. Because that means that what a federal court does is not going to have much effect. So the Supreme Court has recognized in the Harris County case, as well as Fieldcrest-Aries, that the pendency of a state law proceeding that raises the same questions is a heavy thumb on the scale in favor of abstention. Because it mitigates any effective delay. And in fact the district court below considered that factor and recognized that because these issues are and respectfully infringing on the state court's domain to decide those sensitive state law questions for the federal court to make a prediction. When in fact we're going to have an answer through the chambers case very soon. I noted that the district court suggested to the parties that this question be certified to the Colorado Supreme Court. And the parties didn't want to do that. I'm curious to know why. So Your Honor, we recognize that certification has merit when it's applicable. I think there is a practical concern which is that the plaintiffs have resisted quite strongly in this court the certification question which limits our ability to reach stipulated facts that are necessary to walk through the preemption analysis under Colorado law. It looks through a number of factors about the extraterritorial effect, the historical regulation of, for instance, firearms, whether it's at the state or local level. And so Colorado Rule of Appellate Procedure 21.1 subsection C says that the certified question has to include the necessary facts to resolve that question. And so I think there's both sort of a practical and substantive dispute. And again these are the facts that are playing out as we speak in state court in the chambers litigation. There's a conference scheduled for tomorrow in that case. And when that case is decided, discovery is already underway. Once that case is decided, the facts will be fully developed to answer the preemption analysis and that case could then go directly to the Colorado Supreme Court on a full factual record. And we think that's actually perhaps the more efficient route, even though that's not the ordinary course. Thanks. Could I ask you about the chilling effect arguments that have been made? Are you contending that, at least in the abstention context, that the chilling effect factor should apply only when the claim relates to First Amendment rights? Not exactly, Your Honor. I think the application of the chilling doctrine has more to do with the nature of the laws that implicate First Amendment rights than the nature of the rights themselves. I think it's useful to have a foil as an example. So for instance, let's say there's a law that's passed that makes it a crime to promote subversive ideology. This was all the rage a few years ago. And so when you have a law like that, it necessarily implicates vagueness and overbreadth concerns because of the multitude of ways to express a concept. And what the Supreme Court, the reason they have shown some reluctance to abstain in such cases, is that in order to determine the limits of that law, how far does it reach, you need to have a series of potentially infinite iterations of adjudication of a particular application. So let's say, does it apply to a history lecture in a public university? And it would take too much time, the Supreme Court is concerned, to whittle away the state law to its bare core. And so again, it goes into the second half of the Pullman analysis, that because there's a concern about chilling, in the meantime, there may be protected activities that a person doesn't know are implicated, that they refrain from engaging in, they're chilled from engaging. And here, it's quite different. No one is arguing that the Boulder Ordinance is vague. It's very clear what weapons and what ammunition magazines are allowed. If an assault rifle has particular features that enhance its lethality, like a folding or telescoping stock, if it has centerfire ammunition, if it has detachable magazines, it either has those features or it doesn't. And everyone knows what is covered by the ordinance and what is not. And so, that's probably a more fulsome answer, but I think that the bottom line is, chilling is not a practical concern here, because there is no argument that because of the vagueness of the ordinance, a person of normal intelligence is not aware of what is prohibited and what is allowed. And that's the pernicious effect in the first time it comes to mind. Why couldn't someone be chilled, for example, from purchasing a covered weapon when the question of whether the ordinance is constitutional or not is up for grabs? I think that's not really how the courts have used chilling. That's just more of legality. If we are to assume that the restriction is illegal, then you're not allowed to do something illegal in the meantime. Chilling is more about the border cases that arise in the vagueness of First Amendment regulations. And so, I do not know whether what I'm allowed to do, what I want to do, is allow to be prohibited. And therefore, to avoid the risk of criminal prosecution, for instance, I will be more careful and not engage in what may be permitted speech. Well, that's an interesting take on what chilling means. How do you reconcile that with Harmon, where the Supreme Court said that the state law was crystal clear, and that's one reason Pullman abstention didn't apply? I mean, the chilling is you're not exercising your rights for a period of time. You suggest when there's a vagueness issue, there might be litigation that takes a long time, although the first court to hear it may say this is just too vague and we're throwing it out. There's no particular delay in overturning the statute. And so, for instance, Harmon also recognized a number of other features. The election was two months away in that case. Again, it's difficult to reconcile all of the constellations here, but I think it shows why the court should be wary of just simply transposing doctrines from one context to another. And so, I would just want to emphasize at the end that the district court decision below was an incredibly narrow and careful application of a well-established doctrine. When the three Pullman prerequisites are present, it is both prudent and appropriate to abstain. If there are no further questions, we ask the court to affirm the decision below. Thank you, Your Honor. I'll do my best to address two quick points on rebuttals, Your Honor. First, to Judge Matheson and Judge Hart's question. There's absolutely a chilling effect here. Appellants have argued and shown that there are a number of cases where the Supreme Court has looked to chilling effect outside the First Amendment, including the right to travel, the right to vote, even in union matters. And while I'll admit it's outside the record, we know that one of our plaintiffs, the corporate or the business, has suffered a large loss to its business prospects as a result. So, Judge Matheson is exactly correct in his questioning. People are afraid to buy firearms. Second, Your Honor, this is federalism at work. The Civil Cases are submitted and the counsel are excused.